James A. Francis
John Soumilas
Lauren KW Brennan
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
T: (215) 735-8600
F: (215) 980-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICIA MCINTYRE, on behalf of herself and all others similarly situated, | |
| *Plaintiff*, | Civil Matter No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| TRANSUNION, LLC, and TRANSUNION RESIDENT SCREENING SOLUTIONS, INC., | **TRIAL BY JURY DEMANDED** |
| *Defendants*. | |

## I.    PRELIMINARY STATEMENT

1.    This is a consumer class action brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA") seeking relief for Defendants' widespread violations thereof.

2.    Despite the public availability of court records that conclusively demonstrate that eviction cases have been dismissed, withdrawn, vacated, satisfied, or resulted in judgments for tenants, Defendant TransUnion Resident Screening Solutions, Inc. routinely fails to obtain up-to-date information pertaining to the disposition of those cases and publishes harmful, misleading,

and inaccurate tenant screening consumer reports to landlords and property managers in violation of FCRA section 1681e(b).

3.      Both Defendants also systemically violate FCRA section 1681g(a) by failing to provide complete disclosures of all information they maintain about consumers and the sources of that information upon consumers' request.

4.      Defendants' practices harm consumers seeking residential leases by prejudicing their prospective landlords with inaccurate, adverse information and depriving those consumers of valuable congressionally-mandated information.

## II.      **JURISDICTION *and* VENUE**

5.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §1331.

6.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.      **PARTIES**

7.      Plaintiff Patricia McIntyre is an adult individual who resides in Philadelphia, Pennsylvania. At all times pertinent hereto, Plaintiff was a "consumer" within the meaning of 15 U.S.C. § 1681a(c).

8.      Defendant TransUnion, LLC ("TransUnion") regularly conducts business in the Commonwealth of Pennsylvania and has a place of business in Chester, Pennsylvania.

9.      Defendant TransUnion Resident Screening Solutions, Inc. ("TURSS") is a wholly-owned TransUnion subsidiary that regularly conducts business in the Commonwealth of Pennsylvania and has a place of business in Colorado.

10.      At all times pertinent hereto, Defendants were "persons" and "consumer reporting agencies" (singular, "CRA") within the meanings of 15 U.S.C. §§ 1681a(b), (f).

11.    Defendants function as a single, unified CRA, having integrated their ownership, operations, data storage, technical support, information technology services, marketing, quality assurance, auditing, compliance, consumer contact personnel, and oversight efforts.

### IV.    FACTUAL ALLEGATIONS

*Defendants' Acquisition and Use of Eviction Information for Credit Reporting*

12.    For many years, Defendants have purchased public records information pertaining to residential eviction litigation ("eviction information") from one or more private vendors instead of retrieving the actual underlying court records themselves—or even more manageable digital representations—for purposes of creating and selling tenant screening reports to landlords and rental property managers.

13.    The tenant screening reports that Defendants sell to landlords and property managers about thousands of consumers each year are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d) because they are used and expected to be used for multiple purposes governed by 15 U.S.C. § 1681b and the eviction information included within bears on the credit history, credit worthiness, reputation, personal characteristics, and mode of living of the subjects of the reports.

14.    Therefore, Defendants are required by the FCRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the consumer reports they prepare relates. 15 U.S.C. § 1681e(b).

15.    However, Defendants do not follow such procedures, but rather fail to obtain updates to eviction information, regularly and illegally reporting eviction information pertaining to cases and judgments that have been dismissed, withdrawn, satisfied, or have resulted in a judgment for the tenant.

16.    Defendants' practices and procedures regarding the reporting of eviction information, specifically the failure to report the most up-to-date status of eviction cases, causes widespread harm to consumers and interstate commerce as a whole.

17.    This phenomenon is the result of Defendants' intentional business decisions. The eviction information Defendants purchase is merely a summary prepared by its vendors that does not include all the information or the most up-to-date information available at the courthouses or government offices where the records themselves are housed in conjunction with the day-to-day functioning of those entities.

18.    Defendants know that their vendors make mistakes in the condensed, summary eviction information that it purchases for credit reporting purposes and that the information routinely does not include the most up-to-date status of the actual cases.

19.    Purchasing distilled, incomplete public records information was the impetus for regulatory investigations of TransUnion and other CRAs, and dozens of FCRA class action lawsuits throughout the United States, including in this District.[1]

20.    For example, in 2015, the Consumer Financial Protection Bureau ("CFPB") noted that CRAs did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such

---

[1]    *See, e.g., Lustig v. TransUnion, LLC*, Case No. 2:17-CV-01175-GAM (E.D. Pa.) (filed Mar. 16, 2017); *Matthews v. TransUnion, LLC,* Case No. 2:17-cv-01825-JS (E.D. Pa.) (filed Apr. 21, 2017).

weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[2]

21.    Further, the CFPB expressed concern about the accuracy of public records information that the CRAs imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[3]

22.    Other regulators, including the New York Attorney General, initiated investigations of the "Big Three," a group of national CRAs that includes TransUnion, Experian Information Solutions, Inc., and Equifax Information Services, LLC, in part due to similar problems with the accuracy and currency of publics records information in credit reports.

23.    The Big Three ultimately entered into an agreement[4] with the New York Attorney General that they took to calling the "National Consumer Assistance Plan" ("NCAP").

24.    As of July 1, 2017, pursuant to the requirements of the agreement and the NCAP, the Big Three ceased including civil judgment information that did not meet certain minimum

---

[2]    CFPB, *Supervisory Highlights*, 2.1.1 (Summer 2015), available at http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 9, 2018).

[3]    *Id*. at 2.1.2.

[4]    SETTLEMENT AGREEMENT, *In the Matter of the Investigation by Eric T. Schneiderman, Attorney General of the State of New York, of Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion, LLC*, http://www.ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf (last viewed July 9, 2018).

standards in credit reports. In practice, this meant that civil judgments disappeared entirely from consumer reports prepared by the Big Three.[5]

25.    Earlier this year, TransUnion entered into a national class action settlement of public records-related FCRA claims, which was preliminarily approved on March 23, 2018[6] and finally approved on August 29, 2018.[7]

26.    At all times relevant to these allegations, Defendants were aware of the CFPB's and state attorneys' general investigations into TransUnion's public records practices, the NCAP, the various public records class actions pending throughout the United States, and their obligations under the FCRA.

27.    However, Defendants, fully aware of the problems associated with the incomplete and inaccurate information purchased from vendors, have not stopped acquiring, using, and profiting from inaccurate and out-of-date eviction information.

28.    TransUnion, through TURSS, markets eviction information services to landlords by noting that they can provide "Credit reports, criminal background checks, income estimate, and eviction records from TransUnion." It purports to offer "Superior accuracy using advanced matching technology on all tenant screening reports."[8]

---

[5]    *See* CFPB, *Quarterly Consumer Credit Trends Report*, 2-3 (February 2018) https://www.consumerfinance.gov/documents/6270/cfpb_consumer-credit-trends_public-records_022018.pdf (last viewed July 9, 2018).

[6]    *Clark v. TransUnion, LLC*, Case No. 3:15-cv-00391-MHL, Doc. 248 (E.D. Va. Mar. 23, 2018).

[7]    *Clark*, Case No. 3:15-cv-00391-MHL, Doc. 272 (E.D. Va. Aug. 29, 2018).

[8]    *Tenant Screening | TransUnion SmartMove | Tenant Background Check*, https://www.mysmartmove.com (last visited July 9, 2018).

29.     On its website, TURSS asks potential landlords if there is ". . . anything more painful than evicting a tenant?"[9] and promises that the "Eviction Report" portion of its products will help them "predict future behavior by knowing your tenant's past history."[10]

30.     According to TURSS, the Eviction Report "include court records on every file" and "TransUnion eviction reports come from a variety of sources including public court records, and are enhanced with data reported directly to TransUnion."[11]

31.     The reports include: "Tenant judgment for possession and money[;] Unlawful detainers[;] Tenant judgments for rent[;] Failure to pay rent[; and] Writs and warrants of eviction[.]"[12]

*Defendants' Failure to Fully Disclosure Information to Consumers*

32.     Additionally, and despite the clear mandate of FCRA sections 1681g(a)(1)-(2) and binding Third Circuit precedent, Defendants never disclose to consumers the true source of the eviction information that they collect and report to third parties.

33.     The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

34.     In furtherance of that goal, the FCRA mandates that CRAs provide consumers with access to the information sold about them to third parties. *See* 15 U.S.C. §§ 168lg(a).

---

[9]     TRANSUNION RESIDENTIAL SCREENING SOLUTIONS, INC., *Eviction Check | Tenant Eviction Search | TransUnion SmartMove*,
https://www.mysmartmove.com/SmartMove/eviction-check.page (last visited July 9, 2018).

[10]     *Id.*

[11]     *Id.*

[12]     *Id.*

35.    The FCRA requires CRAs to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial and in other limited circumstances. *See* 15 U.S.C. § 168lg(a).

36.    When used in connection with information on any consumer the FCRA uses the term "file" to means "all of the information on that consumer recorded and retained by a consumer reporting agency *regardless of how the information is stored*." *See* 15 U.S.C. § 168la(g) (emphasis added).

37.    "File" "denotes all information . . . that *might* be furnished, or *has been* furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711-12 (*citing Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007)) (emphasis added).

38.    CRAs may not attempt to circumvent their duties to disclose imposed by the FCRA by way of corporate or technological chicanery. 15 U.S.C. § 1681x; *see also Cortez*, 617 F.3d at 711 ("We do not believe that Congress intended to allow credit reporting companies to escape the disclosure requirement in § 1681a(g) by simply contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report.").

39.    Examples of such prohibited attempts include:

*Circumvention through reorganization by data type.* XYZ Inc. is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It restructures its operations so that public record information is assembled and maintained only by its corporate affiliate, ABC Inc. XYZ continues operating as a consumer reporting agency but ceases to comply with the FCRA obligations of a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, asserting that it no longer meets the definition found in FCRA section 603(p), because it no longer maintains public record information. XYZ's conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section.

*Circumvention by a newly formed entity.* Smith Co. is a new entrant in the marketplace for consumer reports that bear on a consumer's credit worthiness, standing and capacity. Smith Co. organizes itself into two affiliated companies: Smith Credit Co. and Smith Public Records Co. Smith Credit Co. assembles and maintains credit account information from persons who furnish that information regularly and in the ordinary course of business on consumers residing nationwide. Smith Public Records Co. assembles and maintains public record information on consumers nationwide. Neither Smith Co. nor its affiliated organizations comply with FCRA obligations of consumer reporting agencies that compile and maintain files on consumers on a nationwide basis. Smith Co.'s conduct is a circumvention or evasion of treatment as a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis, and thus violates this section.

12 C.F.R. part 1022.140(b)(1), (3).

40.    Further, CRAs must "clearly and accurately disclose to the consumer" who requests his or her credit file "the sources" that supplied any "information" to the CRA about that consumer. 15 U.S.C. § 1681g(a)(2).

41.    Disclosure of the true source of a CRA's information is vital to correcting errors and to informing consumers about who is furnishing important credit information about them.

42.    Defendants conceal that their sources for eviction information are private vendors that supply incomplete information that can be inaccurate or not up-to-date.

43.    Defendants are more interested in maintaining the appearance that they obtain actual public records from true government sources and in protecting their low-cost private sources of public record data than in disclosing to consumers vital information that Congress required CRAs to disclose in FCRA section 1681g(a)(2). *See also* ¶ 30, *supra* (TURSS advertises with reference to "court records").

44.    Defendants fail, as a matter of common policy and procedure, to provide consumers who request file disclosures with all information Defendants maintain about the requesting consumer, including never disclosing to consumers the source of the eviction information collected and reported about them.

45.     Defendants' practices not only violate the FCRA as a matter of law, the practices exact serious consequences on rental housing applicants and interstate commerce. Consumers who have obtained the dismissal, withdrawal of an eviction matter, satisfied an eviction judgment, or prevailed in an eviction matter are prejudiced in their ability to obtain leased housing and are deprived of complete information regarding the nature and source(s) of the information Defendants maintain and sell about them.

*Plaintiff's Experience*

46.     At all times relevant to Plaintiff's allegations, full case dockets and digital representations of all documents filed in landlord tenant actions in the Philadelphia Municipal Court, including, but not limited to complaints, judgments, vacaturs, withdrawals, and satisfactions of judgment, were available online at no charge.[13]

*Defendants' Provide Eviction Information from Plaintiff's File the First Time*

47.     On or about August 18, 2016, Plaintiff applied to rent an apartment at Duffield House, an apartment complex in Philadelphia, Pennsylvania. A Duffield House representative, one Noreen Lyons, obtained a tenant screening report from TURSS about Plaintiff for a fee which, upon information and belief, was passed along to Plaintiff.

48.     Under the heading "Eviction Results," the August 18, 2016 TURSS report included seven inaccurate and out-of-date entries of eviction information.

---

[13]     PHILADELPHIA MUNICIPAL COURT ELECTRONIC FILING SYSTEM, https://fjdclaims.phila.gov/phmuni/login.do# (last visited August 20, 2018).

49.    The first inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 1.  Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 5/16/2011 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MP60906646 | Plaintiff: | Kinsale Partners L P |
| File Number | 1104275672 | Judgment Amount: | $1,290 |

50.    This information was inaccurate and out-of-date because the judgment entered against Plaintiff in case LT-11-04-27-5672 on May 6, 2011 was *satisfied* on August 3, 2011, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

51.    The TURSS report contained no reference to the August 3, 2011 satisfaction.

52.    As of the date of the report, August 18, 2016, Defendant had failed to update the status of the May 6, 2011 judgment for more than five years.

53.    The second inaccurate and out-of-date entry, which referenced the same case, appeared, in relevant part, as follows:

| 2.  Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 4/27/2011 |
| County: | Philadelphia County Muni Court | Case Type: | Civil New Filing |
| Record ID: | MP50928569 | Plaintiff: | Kinsale Partners L P |
| File Number | 1104275672 | Judgment Amount: | $1,058 |

54.    This information was inaccurate and out-of-date because the complaint filed against Plaintiff on April 27, 2011 was a nullity, having merged with the May 6, 2011 judgment in that case, which was *satisfied* on August 3, 2011. *See* ¶¶ 50-51, *supra*.

55.    Moreover, no judgment was entered on April 27, 2011 as the entry's reference to a "Judgment Amount" indicated. Rather, a complaint was filed.

56.    The third inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 3. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 11/5/2010 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MP42527173 | Plaintiff: | Kinsale Partners Lp |
| File Number | 1010084331 | Judgment Amount: | $2,396 |

57.    This information was inaccurate and out-of-date because the judgment entered against Plaintiff in case LT-10-10-08-4331 on November 5, 2010 was *satisfied* on April 6, 2011, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

58.    The TURSS report contained no reference to the April 6, 2011 satisfaction.

59.    As of the date of the report, August 18, 2016, Defendant had failed to update the status of the November 5, 2010 judgment for nearly five and a half years.

60.    The fourth inaccurate and out-of-date entry, which referenced the same case, appeared, in relevant part, as follows:

| 4. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 10/8/2010 |
| County: | Philadelphia County Muni Court | Case Type: | Civil New Filing |
| Record ID: | MP39228667 | Plaintiff: | Kinsale Partners Lp |
| File Number | 1010084331 | Judgment Amount: | $1,791 |

61.    This information was inaccurate and out-of-date because the complaint filed against Plaintiff on October 8, 2010 was a nullity, having merged with the November 5, 2010 judgment in that case, which was *satisfied* on April 6, 2011. *See* ¶¶ 57-58, *supra*.

62.    Moreover, no judgment was entered on October 8, 2010 as the entry's reference to a "Judgment Amount" indicated. Rather, a complaint was filed.

63.     The fifth inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 5.  Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 3902 City Ave #B1223<br>Philadelphia Pa 19131 | Action Date: | 10/5/2012 |
| County: | Philadelphia County Muni Court | Case Type: | Civil New Filing |
| Record ID: | MP80537285 | Plaintiff: | Bldg Philadelphia Lp |
| File Number | 1210053884 | Judgment Amount: | $3,712 |

64.     This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-12-10-05-3884 on October 5, 2012 was a nullity, having merged with the judgment entered in that case on November 6, 2012, which was *satisfied* on May 14, 2015. *See* ¶¶ 72-73, *infra*.

65.     Moreover, no judgment was entered on October 5, 2012 as the entry's reference to a "Judgment Amount" indicated. Rather, a complaint was filed.

66.     The sixth inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 6.  Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 3902 City Ave #B1223<br>Philadelphia Pa 19131 | Action Date: | 1/18/2012 |
| County: | Philadelphia County Muni Court | Case Type: | Civil New Filing |
| Record ID: | MP65555473 | Plaintiff: | Bldg Philadelphia Lp |
| File Number | 1201185230 | Judgment Amount: | $3,211 |

67.     This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-12-01-18-5230 on January 18, 2012 was *withdrawn* on February 17, 2012, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

68.     The TURSS report contained no reference to the February 17, 2012 withdrawal.

69.     Moreover, no judgment was entered on January 18, 2012 as the entry's reference to a "Judgment Amount" indicated. Rather, a complaint was filed.

70.    As of the date of the report, August 18, 2016, Defendant had failed to update the status of the January 18, 2012 filing for approximately four and a half years.

71.    The seventh inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 7.  Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 3902 City Ave #B1223<br>Philadelphia Pa 19131 | Action Date: | 11/6/2012 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MP84746151 | Plaintiff: | Bldg Philadelphia Lp |
| File Number | 1210053884 | Judgment Amount: | $5,728 |

72.    This information was inaccurate and out-of-date because the judgment entered against Plaintiff in case LT-12-10-05-3884 on November 6, 2012 was *satisfied* on May 14, 2015, when an entry reflecting that updated disposition was filed on the publicly-available case docket.

73.    The TURSS report contained no reference to the May 14, 2015 satisfaction.

74.    As of the date of the report, August 18, 2016, Defendant had failed to update the status of the November 6, 2012 judgment for more than a year.

75.    As a result of the inaccuracies, Plaintiff's application was denied.

*Defendants Provide Eviction Information from Plaintiff's File a Second Time*

76.    On or about July 27, 2017, Plaintiff applied to rent an apartment at Alden Park, an apartment complex in Philadelphia, Pennsylvania and TURSS provided eviction information about Plaintiff to RentGrow, Inc., d/b/a Yardi Resident Screening ("RentGrow") upon request of one Lisa Legere and for a fee which, upon information and belief, was passed along to Plaintiff.

77.    The information TURSS provided to RentGrow on July 27, 2017 included eleven inaccurate and out-of-date entries of eviction information.

78.    The first inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 1.  Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 3701 Conshohocken Av #31 921 Philadelphia PA 19131 | Action Date: | 12/6/2016 |
| County: | Philadelphia County Muni Court | Case Type: | Civil New Filing |
| Record ID: | MY59115837 | Plaintiff: | Duffield House Assoc |
| File Number | 1612063568 | Judgment Amount: | $1,366 |

79.    This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-16-12-06-3568 on December 6, 2016 was a nullity, having merged with the judgment entered on February 15, 2017, which was *vacated* on May 18, 2017 when an entry reflecting that updated disposition was filed on the publicly-available case docket.

80.    The TURSS report contained no reference to the May 18, 2017 vacatur.

81.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of the December 6, 2016 filing for more than two months.

82.    The second inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 2.  Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 4401 Conshohocken Ave #C3 Philadelphia Pa 19131 | Action Date: | 4/6/2011 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MY59264240 | Plaintiff: | Kinsale Partners Lp |
| File Number | 1010084331 | Judgment Amount: | $2,396 |

83.    This information was inaccurate and out-of-date because no "civil judgment" was entered against Plaintiff in case LT-10-10-08-4311 on April 6, 2011, let alone one for $2,396. Rather, the entry regarding Plaintiff's *satisfaction* of the November 5, 2010 judgment was filed on the publicly-available case docket that day. *See* ¶ 57, *supra*.

84. The TURSS report contained no reference to the April 6, 2011 satisfaction, instead inaccurately casting it as an *additional* judgment entered against Plaintiff, doubling the negative impact of the inaccurate information.

85. As of the date of the report, July 27, 2017, Defendant had failed to update the status of the November 5, 2010 judgment for more than six years.

86. The third inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the May 16, 2011 judgment in case LT-11-04-27-5672, which Plaintiff *satisfied* on August 3, 2011. *See* ¶¶ 49-50, *supra*.

87. Relatedly, the fourth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the April 27, 2011 filing of case LT-11-04-27-5672, which was *satisfied* on August 3, 2011. *See* ¶¶ 53-55, *supra*.

88. The TURSS report contained no reference to the August 3, 2011 satisfaction.

89. As of the date of the report, July 27, 2017, Defendant had failed to update the status of the May 16, 2011 judgment for more than six years.

90. The fifth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the November 5, 2010 judgment in case LT-10-10-08-4331, was Plaintiff *satisfied* on April 6, 2011. *See* ¶¶ 56-57, *supra*.

91. Relatedly, the sixth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the October 8, 2010 filing of case LT-10-10-08-4331, the November 5, 2010 judgment in which Plaintiff *satisfied* on April 6, 2011. *See* ¶¶ 60-62, *supra*.

92. The TURSS report contained no reference to the April 6, 2011 satisfaction.

93. As of the date of the report, July 27, 2017, Defendant had failed to update the status of the November 5, 2010 judgment for nearly six and a half years.

94.    The seventh inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 7.  Mcintyre, Patricia | Dataset: Pennsylvania Evictions(PAEVN) |
|---|---|
| Address:    4401 Conshohocken Ave #C3<br>Philadelphia Pa 19131 | Action Date:    8/3/2011 |
| County:    Philadelphia County Muni Court | Case Type:    Civil Judgment |
| Record ID:    MY59749883 | Plaintiff:    Kinsale Partners Lp |
| File Number    1104275672 | Judgment Amount:    $1,290 |

95.    This information was inaccurate and out-of-date because no "civil judgment" was entered against Plaintiff in case LT-11-04-27-5672 on August 3, 2011, let alone one for $1,290. Rather, the entry regarding Plaintiff's *satisfaction* of the May 16, 2011 judgment was filed on the publicly-available case docket that day. *See* ¶ 50, *supra*.

96.    The TURSS report contained no reference to the August 3, 2011 satisfaction, instead inaccurately casting it as an *additional* judgment entered against Plaintiff, doubling the negative impact of the inaccurate information.

97.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of the May 16, 2011 judgment for nearly six years.

98.    The eighth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the October 5, 2012 filing of case LT-12-10-05-3884, the November 6, 2012 judgment in which Plaintiff *satisfied* on May 14, 2015. *See* ¶ 72, *supra*.

99.    The TURSS report contained no reference to the May 14, 2015 satisfaction.

100.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of the November 6, 2012 judgment for more than two years.

101.    The ninth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the January 18, 2012 filing of case LT-12-01-18-5230, which case was *withdrawn* on February 17, 2012. *See* ¶ 67, *supra*.

102.    The TURSS report contained no reference to the February 17, 2012 withdrawal.

103.    Moreover, no judgment was entered on January 18, 2012 as the entry's reference to a "Judgment Amount" indicated. Rather, a complaint was filed.

104.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of the January 18, 2012 filing for approximately five and a half years.

105.    The tenth inaccurate and out-of-date entry was a recapitulation of the erroneous August 18, 2016 entry regarding the November 6, 2012 judgment in case LT-12-10-05-3884 which case *satisfied* on May 14, 2015. *See* ¶ 72, *supra*.

106.    Relatedly, the eleventh inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 11. Mcintyre, Patricia | | Dataset: Pennsylvania Evictions(PAEVN) | |
|---|---|---|---|
| Address: | 3902 City Ave #B1223 Philadelphia PA 19131 | Action Date: | 5/14/2015 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Judgment |
| Record ID: | MY69476513 | Plaintiff: | Bldg Philadelphia Lp |
| File Number | 1210053884 | Judgment Amount: | $5,728 |

107.    This information was inaccurate and out-of-date because no "civil judgment" was entered against Plaintiff in case LT-12-10-05-3884 on May 14, 2015, let alone one for $5,728. Rather, the entry regarding Plaintiff's *satisfaction* of the November 6, 2012 judgment was filed on the publicly-available case docket that day. *See* ¶ 72, *supra*.

108.    The TURSS report contained no reference to the May 14, 2015 satisfaction, instead inaccurately casting it as an additional judgment entered against Plaintiff, doubling the negative impact of the inaccurate information.

109.    As of the date of the report, July 27, 2017, Defendant had failed to update the status of the November 6, 2012 judgment for more than two years.

110.    Because her previous lease at another location expired and her most recent attempts to secure rental housing have been unsuccessful, Plaintiff has been forced to live in much more expensive extended-stay housing for many months.

*TURSS Inadequately Discloses the Sources of Eviction Information*

111.    In April 2018, Plaintiff requested and obtained a copy of her TURSS file ("TURSS Disclosure").

112.    The TURSS Disclosure purported to contain, among other information, "the contents of a consumer report generated on 8/18/2016 and 7/27/2017 for Duffield House and RentGrow."

113.    Under the heading "Eviction Results," in a portion of the TURSS Disclosure that purported to have been "requested" on April 30, 2018, five inaccurate and out-of-date entries pertaining to eviction cases appeared.

114.    The first inaccurate and out-of-date entry appeared, in relevant part, as follows:

---

1.  Mcintrye, Patrcia          Dataset: Pennsylvania Evictions (PAEVN)

| | | | |
|---|---|---|---|
| Address: | 3701 Conshohocken Av #31 921 Philadelphia PA 19131 | Action Date: | 7/28/2017 |
| County: | Philadelphia County Muni Court | Case Type: | Civil Dismissal |
| Record ID: | MY59115837 | Plaintiff: | Duffield House Assoc |
| File Number: | 1612063568 | Judgment Amount: | $0.00 |

---

115.    This information was inaccurate and out-of-date because no judgment was entered in case LT-16-12-06-3568 on July 28, 2017, but rather, the case was dismissed and an entry reflecting same was entered in the case docket on that day, making the case a legal nullity.

116.    The second inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 2.  Mcintrye, Patrcia | Dataset: Pennsylvania Evictions (PAEVN) |
|---|---|
| Address:  3701 Conshohocken Av #C3<br>Philadelphia PA 19131 | Action Date: 8/3/2011<br>Case Type: Civil Judgment |
| County:  Philadelphia County Muni Court | Plaintiff: Kinsale Partners L P |
| Record ID:  MY59749883 | Judgment Amount: $0.00 |
| File Number:  1104275672 | |

117.    This information was inaccurate and out-of-date because no "civil judgment" was entered against Plaintiff in case LT-11-04-27-5672 on August 3, 2011. Rather, the entry regarding Plaintiff's *satisfaction* of the May 16, 2011 judgment was filed on the publicly-available case docket that day.

118.    The TURSS Disclosure contained no reference to the August 3, 2011 satisfaction, instead inaccurately casting it as a "civil judgment" entered against Plaintiff, denying her the benefit of having satisfied the May 16, 2011 judgment.

119.    Upon information and belief, TURSS never reports the satisfaction of an eviction case judgment, denying the subjects of its reports the benefit of having paid what they owed to former landlords.

120.    The third inaccurate and out-of-date entry appeared, in relevant part, as follows:

| 3.  Mcintrye, Patrcia | Dataset: Pennsylvania Evictions (PAEVN) |
|---|---|
| Address:  3902 City Ave #B1223<br>Philadelphia PA 19131 | Action Date: 10/5/2012<br>Case Type: Civil New Filing |
| County:  Philadelphia County Muni Court | Plaintiff: Bldg Philadelphia Lp |
| Record ID:  MP80537285 | Judgment Amount: $0.00 |
| File Number:  1210053884 | |

121.    This information was inaccurate and out-of-date because the complaint filed against Plaintiff in case LT-12-10-05-3884 on October 5, 2012 merged with the judgment entered on November 6, 2012, which Plaintiff *satisfied* on May 14, 2015. *See* ¶¶ 125-126, *infra*.

122.    The fourth inaccurate and out-of-date entry appeared, in relevant part, as follows:

---

4.  Mcintrye, Patrcia          Dataset: Pennsylvania Evictions (PAEVN)

        Address:  3902 City Ave #B1223          Action Date:  2/17/2012
                     Philadelphia PA 19131          Case Type:  Civil Dismissal
         County:  Philadelphia County Muni Court          Plaintiff:  Bldg Philadelphia Lp
    Record ID:  MP65555473          Judgment Amount:  $0.00
  File Number:  1201185230

---

123.    This information was inaccurate and out-of-date because when the complaint filed against Plaintiff in case LT-12-01-18-5230 on January 18, 2012 was *withdrawn* on February 17, 2012, it became a nullity.

124.    The fifth inaccurate and out-of-date entry appeared, in relevant part, as follows:

---

5.  Mcintrye, Patrcia          Dataset: Pennsylvania Evictions (PAEVN)

        Address:  3902 City Ave #B1223          Action Date:  5/14/2015
                     Philadelphia PA 19131          Case Type:  Civil Judgment
         County:  Philadelphia County Muni Court          Plaintiff:  Bldg Philadelphia Lp
    Record ID:  MY69476513          Judgment Amount:  $0.00
  File Number:  1210053884

---

125.    This information was inaccurate and out-of-date because no "civil judgment" was entered against Plaintiff in case LT-12-10-05-3884 on May 14, 2015. Rather, the entry regarding Plaintiff's *satisfaction* of the November 6, 2012 judgment was filed on the publicly-available case docket that day.

126.    The TURSS disclosure contained no reference to the May 14, 2015 satisfaction, instead inaccurately casting it as a "civil judgment" entered against Plaintiff, denying her the benefit of having satisfied the November 6, 2012 judgment.

127.     In relevant part, the TURSS Disclosure also stated:

**TURSS Sources of Data**

The information TransUnion Rental Screening Solutions (TURSS) has on file related to you and/or included in your current and/or historical consumer report(s) generated on 8/18/2016, 7/27/2017 and 4/30/2018 was collected from public record sources by TransUnion Rental Screening Solutions or a company TURSS hired to collect such information. If you submit a dispute of the accuracy of a public record item, TransUnion Rental Screening Solutions may update the item based on the information you provide, or we may investigate your dispute by checking with the public record source or by asking our vendor to verify that the current status of the public record is reported accurately.

The public record sources used to generate the report(s) are as follows:

Pennsylvania, Philadelphia County Muni Court

128.     In fact, TURSS had not obtained information regarding Plaintiff's eviction litigation history from the records of the Philadelphia County Municipal Court.

129.     Rather, upon information and belief, TransUnion acquired such information from a third-party vendor, transferred same into its database, and provided TURSS with the means to access same and to prepare consumer reports including the information.

130.     TURSS disclosed neither TransUnion nor the third-party vendor as the source(s) of the eviction information in Plaintiff's file in the TURSS Disclosure.

*TransUnion's Incomplete Disclosure of Plaintiff's TransUnion File*

131.     In July of 2018, Plaintiff requested and obtained a copy of her TransUnion credit file disclosure ("TransUnion Disclosure").

132.     The TransUnion Disclosure contained no reference to any eviction information whatsoever, let alone the copious information that TURSS had provided to Plaintiff's potential landlords and/or property managers and which had appeared in the reports prepared by TURSS and the TURSS Disclosure. *See* ¶¶ 47-126, *supra*.

133.    Nevertheless, the TransUnion Disclosure included several inquiries for Plaintiff's credit information associated with "Tenant Screening," making it clear that TransUnion had provided eviction information to third parties including, but not limited to, Plaintiff's potential landlords and property managers.

134.    TransUnion did not disclose Plaintiff's complete file to her after her request failing to disclose the eviction information that it had previously provided to third parties.

135.    TransUnion's incomplete disclosure denied Plaintiff the opportunity to learn the extent of the eviction information TransUnion was providing to third parties about her despite Congress's clear mandate in FCRA section 1681g(a)(1) and its implementing regulations.

136.    At all times pertinent hereto and with respect to all of the foregoing allegations, Defendants' conduct was a result of deliberate policies and practices, was willful, was carried out in reckless disregard for a consumers' rights as set forth under sections 1681e(b) and 1681g(a) of the FCRA, and further assumed an unjustifiably high risk of harm.

## V.    CLASS ACTION ALLEGATIONS

137.    Plaintiff brings this action on behalf of the following Classes for Defendant TURSS' violations of FCRA section 1681e(b):

### *Failure to Update Class – United States*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were the subjects of tenant screening consumer reports created by Defendant TransUnion Resident Screening Solutions, Inc. that contained eviction information, but failed to state that, according to court records dated at least 30 days prior to the date Defendant prepared the report, the referenced eviction action had been withdrawn, dismissed, non-suited, or had resulted in a judgment for the tenant defendant.

### *Failure to Update Subclass I: Commonwealth of Pennsylvania*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were the subjects of tenant screening consumer reports created by Defendant TransUnion Resident Screening Solutions, Inc. that contained information pertaining to a landlord tenant action filed within the Commonwealth of Pennsylvania, but failed to state that the action, according to court records dated at least 30 days prior to the date Defendant prepared the report, had been withdrawn, dismissed, non-suited, or had resulted in a judgment for the tenant defendant.

### *Failure to Update Subclass II: Philadelphia Municipal Court*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were the subjects of tenant screening consumer reports created by Defendant TransUnion Resident Screening Solutions, Inc. that contained information pertaining to a landlord tenant action filed in the Philadelphia, Pennsylvania Municipal Court but failed to state that, according to court records dated at least 30 days prior to the date Defendant prepared the report, the action had been withdrawn, dismissed, non-suited, or had resulted in a judgment for the tenant defendant.

138.    Plaintiff brings this action on behalf of the following Class for Defendant TransUnion's violations of FCRA section 1681g(a)(1):

### *Incomplete Disclosure Class*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories for whom Defendant TransUnion, LLC has a record of transmitting a file disclosure in response to a request, which did not include any eviction information that TransUnion Resident Screening Solutions, Inc. had previously included in a consumer report it prepared about the subject of the file disclosure.

139.    Plaintiff brings this action on behalf of the following Classes for Defendant TransUnion's and Defendant TURSS' violations of FCRA section 1681g(a)(2):

### Sources Disclosure Class

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories for whom Defendants TransUnion, LLC or TransUnion Rental Screening Solutions, Inc. have a record of sending a file disclosure that included any eviction information in response to a request.

140.    The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that the members of the Classes number in the thousands. Defendants sell eviction information to thousands of businesses throughout the country, and their reports to such businesses are standardized, form documents, produced by the same practices and procedures applicable to all subjects of the reports. Furthermore, upon information and belief, Defendants prepare and send disclosures to consumers using standardized policies and procedures.

141.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether Defendants willfully and/or negligently violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of the information contained in consumers' reports with respect to eviction cases that had been withdrawn, dismissed, non-suited, or resulted in a judgment for the tenant defendant at least 30 days prior; whether Defendants violated the FCRA by failing to provide all of the information it maintains about consumers upon request; and whether Defendants violated the FCRA by failing to disclose the source(s) of eviction information.

142.    Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

143.    Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

144.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

145.    Whether Defendants violated the FCRA can be determined by examination of Defendants' policies and conduct and a ministerial inspection of Defendants' business records and publicly available eviction litigation records.

146.    A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendants' records.

## VI.   **CLAIMS** *for* **RELIEF**

### COUNT I – VIOLATION *of* FCRA SECTION 1681e(b)
### *Against Defendant TransUnion Rental Screening Solutions, Inc.*

147.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

148.   Pursuant to sections 1681n and 1681o of the FCRA, TURSS is liable to the Plaintiff and the Failure to Update Classes for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b). Specifically, TURSS failed to follow reasonable procedures to assure maximum accuracy of eviction information contained in tenant screening reports prepared about Plaintiff and members of the Failure to Update Classes, thereby publishing inaccurate and outdated eviction information to their potential landlords and property managers.

### COUNT II – VIOLATION *of* FCRA SECTION 1681g(a)(1)
### *Against Defendant TransUnion, LLC*

149.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

150.   Pursuant to 15 U.S.C. §§ 1681n and 1681o, TransUnion is liable to Plaintiff and members of the Incomplete Disclosure Classes for negligently and willfully failing to provide a complete copy of all the information in her file upon request, in violation of FCRA section 1681g(a)(1). Specifically, TransUnion did not disclose to Plaintiff and members of the Incomplete Disclosure Classes upon their request the eviction information it maintains and sells about them to potential landlords and other users of TURSS products and services.

**COUNT III - VIOLATION *of* FCRA SECTION 1681g(a)(2)**
*Against Defendants TransUnion, LLC and TransUnion Rental Screening Solutions, Inc.*

151.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

152.    Pursuant to 15 U.S.C. §§ 1681n and 1681o, TransUnion and TURSS are liable for negligently and willfully failing to provide the sources of the information in consumers' file upon request, in violation of FCRA section 1681g(a)(2). Specifically, TransUnion and TURSS do not disclose the identity of the third-party vendor(s) of eviction information to consumers upon their request, but instead falsely imply that the information comes directly from courthouses and other government record sources.

## VII.    PRAYER *for* RELIEF

WHEREFORE, with respect to Plaintiff's Counts I, II, and III, Plaintiff prays this Honorable Court enter an order granting the following relief:

A.    certifying the proposed Classes under Federal Rule of Procedure 23 and appointing Plaintiff and her counsel to represent the Classes;

B.    declaring that Defendants' conduct as alleged is in violation of the FCRA;

C.    awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

D.    awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

E.    awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

F.    awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

G.    and granting such other and further relief as may be just and proper.

## VIII.   **JURY TRIAL DEMAND**

153.    Plaintiff demands trial by jury on all issues so triable.

Dated: September 10, 2018

Respectfully submitted,

PATRICIA MCINTYRE, *on behalf of herself and all others similarly situated.*

By:    */s/John Soumilas*
James A. Francis
John Soumilas
Lauren KW Brennan
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Leonard A. Bennett*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
lenbennett@clalegal.com

*Attorneys for Plaintiff*

* Petition to appear *pro hac vice* forthcoming.